In the Matter of HOWARD EISENBERG, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 12, 1988

**APPEARANCES OF COUNSEL**

*Michael A. Gentile* for petitioner.

*Howard Eisenberg,* respondent *pro se.*

## OPINION OF THE COURT

Per Curiam.

Petitioner, Departmental Disciplinary Committee (DDC) for the First Judicial Department, moves for an order, pursuant to subdivision (d) of section 603.4 of the Rules Governing the Conduct of Attorneys in the Appellate Division, First Judicial Department (22 NYCRR), confirming a report of a Hearing Panel (Panel), which includes findings of fact, conclusions of law, and a recommendation that respondent Howard Eisenberg be disbarred from the practice of law. In response to DDC's motion, respondent, *pro se,* cross-moves, in substance, for an order: (1) dismissing the charges; (2) disaffirming the report of the Panel due to the alleged unconstitutionally repugnant State Due Process Law, which denied respondent a fair hearing; or, in the alternative, (3) appointing a Referee to conduct a hearing.

Respondent was admitted to practice by this court, on January 5, 1955, and he maintained an office for the practice of law within this Department, during the period covered by the charges.

This disciplinary proceeding was commenced, on or about December 16, 1986, by the DDC's personal service upon respondent of a notice and statement of charges (statement).

The statement contains four charges.

Charge one alleges that respondent engaged in: (a) conduct involving neglect of a legal matter entrusted to him, in violation of Code of Professional Responsibility DR 6-101 (A) (3); and (b) conduct involving the failure to preserve and identify the funds of a client, in violation of DR 9-102. In substance, the DDC contends, under this charge, that, in June 1984, respondent was retained by Mr. Robert Fulkerson (Mr. Fulkerson) and Mrs. Zulema Fulkerson to represent them in the sale of Dairy Choice, Inc.; respondent was paid a fee of $600 in cash; on the closing date, June 6, 1984, pursuant to the fifth clause of the contract of sale, respondent, as the sellers' (Fulkersons') attorney, received from the purchaser a $5,000 teller's check, which had been drawn on Apple Bank; this teller's check was to be held in escrow until the New York State Department of Taxation and Finance issued a statement that Mr. Fulkerson's taxes had been paid in full; also any other outstanding debts or liabilities, which became known in the 90 days following the sale, would be satisfied from this escrow; respondent failed and neglected to deposit

the $5,000 teller's check into an attorney's escrow account; and, respondent failed and neglected to properly safeguard the $5,000 teller's check, since respondent permitted it to remain in his office, where it was allegedly misappropriated and negotiated by respondent's employee.

Charge two alleges that respondent: (a) has been guilty of failing to account for client funds in his possession, in violation of DR 9-102 (B) (3); and (b) of attempting to exonerate himself from liability to his client for his personal malpractice, in violation of DR 6-102 (A). In substance, the DDC contends, under this charge, during the period from June 1984 through August 1985, respondent was requested by his clients, the Fulkersons, to account for the $5,000 escrow fund; finally, respondent disclosed to these clients that this escrow fund had been misappropriated by his employee, and thereafter, respondent failed and refused to reimburse these clients for the misappropriated funds, although payment has been duly demanded; and respondent failed and neglected to take any action to obtain repayment of the misappropriated funds.

Charge three alleges that respondent has been guilty of failure to comply with the filing requirement for registration of attorneys and counselors-at-law, in violation of 22 NYCRR 118.1. In substance, the DDC contends, under this charge, respondent is an attorney, who was admitted to practice in the State of New York on or before January 1, 1982; is currently engaged in the practice of law within this Department; has failed to file a registration statement with the Chief Administrator of the Courts, as provided by section 118.1 (a); and has failed to pay the requisite registration fee, as provided by section 118.1 (g).

Charge four alleges that respondent has been guilty of failure to maintain an attorney's special bank account, in violation of section 603.15 (a) of the rules of this Department.

Subsequently, on January 12, 1987, although respondent was absent, the Panel held a hearing on these four charges.

In substance, the Panel decided to proceed, since it found that, after respondent was personally served with the charges, he had neither served an answer nor had he initiated any contact with the DDC concerning them; on January 7, 1987, a member of the counsel staff of the DDC telephoned respondent, and respondent acknowledged receiving the charges, stated that he had not read them, but he indicated he would submit an answer; during this January 7th conversation,

respondent was informed the Panel Hearing would commence on January 12th; as of the hearing date, the DDC had not received an answer to the charges from respondent; and on the hearing date, neither the respondent nor anyone else on his behalf appeared.

Before receiving evidence, the Panel chairperson stated, in pertinent part: "Now, under Section 3.9 (d) of the rules of the [DDC], [respondent's] failure to either serve and file an answer or to respond otherwise to the charges, results in those charges being deemed admitted". We have held in *Matter of Morahan* (50 AD2d 398, 399 [1st Dept 1976]) that a respondent's failure to file an answer to the charges constitutes admission of those charges.

At the hearing, the DDC presented both testimonial and documentary evidence against the respondent, and this evidence included testimony from respondent's client Mr. Fulkerson; the contract of sale, mentioned *supra;* a copy of the subject $5,000 teller's check; and a certified statement from the Office of Court Administration.

Following the receipt of this evidence, the Panel, in its report, dated February 17, 1987, which contains findings of fact, conclusions of law and a recommendation, sustained all four of the charges, and recommended that respondent be disbarred.

Thereafter, we note in passing that on June 15, 1987, the Panel, at the request of respondent, held a hearing for the purpose of permitting respondent to appear "with counsel to put in matters in mitigation". In substance, at this June 15th hearing, the respondent appeared without counsel, and, except for his own unsworn statement, offered neither testimonial nor documentary evidence in mitigation. When the respondent completed his statement, the chairperson stated that the Panel was adhering to its determination, as set forth in its February 17, 1987 report, discussed *supra.*

Our review of the record convinces us that overwhelming evidence, both testimonial and documentary, supports the findings of the Panel.

We have examined the respondent's moving papers in support of his cross motion, and, we find that they fail to contain any meritorious arguments that would lead to a conclusion that: (a) the Panel's findings were against the weight of the evidence, and, (b) the respondent was deprived of a fair hearing to defend himself against the charges.

Based upon this record, respondent's "conduct demonstrates his utter lack of minimal professional character" *(Matter of Farrell,* 27 AD2d 61, 62 [1st Dept 1966], *lv denied* 20 NY2d 861 [1967]).

Accordingly, the motion of the petitioner is granted to confirm the Panel's report in its entirety; the cross motion of respondent is denied in its entirety; and it is ordered that respondent is disbarred and his name stricken from the roll of attorneys and counselors-at-law.

SANDLER, J. P., ROSS, ASCH, KASSAL and SMITH, JJ., concur.

Petition granted, cross motion denied, and respondent disbarred from practice as an attorney and counselor-at-law in the State of New York, effective February 16, 1988.